the judges of the United States Court of Appeals for the Fourth Circuit. Oh, yeah. Oh, yeah. Oh, yeah. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nine. Give their attention where the court is now sitting. God save the United States and this honorable court. Thank you. Be sued. Does even without you Uh, good morning. Welcome to the fourth circuit today. And, uh, you know, we'll be doing this by video found with Judge Keenan. And I understand the clerk has given you the rules for that. So, uh, that said, all case, uh, 15 41 95 15 41 6 Yeah. Hey, guys. On behalf of Lester Woods with me this morning is Kim Albro on behalf of Mr Johnson. Also, the family of Mr Woods, his wife, sister and Children are here. Uh, your honors. Um, this case begins with Mr Holiday's opening statement to the jury. Ladies and gentlemen, Lester Woods and Michael and the primary victim of their fraud is Equifax. That's the beginning of the story. The end of the story is the sentencing when Equifax is nowhere to be found. Equifax apparently was not even invited to the sentencing. And the reason for that is they were not a victim. In a matter of a matter of fact, they lost nothing in order to be convicted of the fire for all that they were charged with. The statute requires that the defendants obtain money or property, and these men did neither. Equifax lost nothing. Equifax Experian Trans Union. They're synchronized. They share the same facts, and that's what was at issue. They're facts. You can't own facts. Equifax has no property interest in facts. You can't say they own the consumer credit information. It's not their property. They didn't lose anything. Well, as a case, affect the value of the database. Well, Your Honor, I don't think there's any evidence to in the record to establish, uh, establish that. But but there's got to be more. The defendants have got to obtain. They have got to receive something under the statute. That's the word in the statute, as explained as well through Supreme Court decisions. They must receive something from Equifax. And and that just didn't happen in this case. Uh, why the government included Equifax even in the case? I don't know. It seems to me it would have been a much neater, cleaner case had they just focused on Mr Woods clients in that relationship, and instead they brought in Equifax. How does your argument, uh, how do you reconcile your argument with the long settled principle that a scheme to fraud does not require success or an actual loss? Well, I understand, Your Honor. How do you reconcile? Well, well, there was there was just Equifax lost nothing here. They they're the scheme was successful in this case, but Equifax lost nothing, right? And so my question is, if even an unsuccessful screen scheme, uh, is cognizable under the criminal law, how can it be that a successful scheme is not? Well, Judge, again, unsuccessful in the sense that there's no actual loss or gain for that matter. I hear you. I understand you, Your Honor. Um, but but Your Honor, again, under under the under the statute, you've got to. You've got to obtain some property. Equifax just did not lose anything here, Your Honor. They weren't deprived of anything. The best argument that the government has is that they were deprived of a of a right to control and that to use the language of the indictment that their integrity was impaired. That's a civil cause of action. That's not that's not a crime, Your Honor. What do you do about the idea that in the evidence, the actual real victims, as you put it, uh, they're talked about in the evidence. They're talked about in the large, as I recall, dealt with those victims. So when the jury sufficiently apprised of what and your client was sufficiently apprised of what the charge was, how they were going to prove it, Your Honor, I just would disagree. The entire indictment that was presented to the grand jury. All it in virtually every paragraph of the indictment. And again, Mr Holiday's very opening statement. This case was about Equifax. There was casual. I'll concede there's casual mentioned during the course of the trial of the other victims. But but the trial, the opening statements, the closing statements, the post trial motions all deal with Equifax in a property entrance. In fact, when you started your argument a few minutes ago and quoting the government's opening statement, you said, I think accurately, the principal victim here is Equifax. It was a direct quote. That's correct, Your Honor. Principal victim and others and others. And I can see that point there. There were other alleged victims that were casually mentioned in the case, Your Honor. But again, the entire trial that was presented to the jury dealt with Equifax. Uh, and that's what the jury was presented with the Equifax issue. That's what this this that's what this case was all about. Equifax and its property. Um, and clearly no money was taken from Equifax. Obtaining money or property in all cases is a necessary element of the crown. Um, so again, Your nothing here. The entire case dealt with Equifax and and Judge Judge Wooten's written order on the on the post trial motions again said that dealt with the Equifax issue, not with the other clients of Mr Woods. So, uh, I'm also handling the Bruton issue, Your Honor's that I'd like to address briefly. Um, as you know, um, this issue was heavily briefed and discussed. Uh, pretrial. It was, uh, the court, the attorneys all wrestle with it. And so in order to, uh, cure the Bruton issue, the government suggested that they fill in Mr Woods name with quote someone else. Now, the jury, um, knew exact. There are only two men involuntary. Who else could someone else be than Mr Woods? The jury knew immediately that it was going to be, uh, Mr Woods, uh, in regards to the statement issued by Johnson, Mr Holiday in his opening statement again. Here's how the conspiracy work work. Lester Woods would get their personal information, social security numbers, driver's license, etcetera. And he would provide those to Michael Michael Johnson. He would contact Michael Johnson, who was sitting over there in the bluish tie. Johnson would put down these clients of Lester Woods had been victims of identity theft when, in fact, they had not. So, Your Honor's, there's no doubt who someone else is in regards to, uh, this issue. When the government tried to cure the Bruton problem, which is obvious on his face by using the phrase someone else, everybody in the courtroom knew who someone else was. The jury knew immediately who someone else was that the Bruton exceptions involved connecting of the dots. Is there someone else involved? Is it? Is it a possibility that that statement can be attributed to someone else? None of that. In this case, two men are sitting at the table. Mr Holidays already outlined it in his opening statement. Everyone knew, in fact, that someone else was Lester Woods. Thank you. Albro. Good morning. May it please the court. Kim Albro here on behalf of Appellant Michael Johnson, and I'll address the issues related to the rule 29 motions and the constructive amendment argument. First, when the appellants made the rule 29 motions, the court had a duty to make an independent judgment about whether or not the evidence was sufficient to convict on what was charged in the indictment. And as Mr Ashmore indicated, the government's case from the beginning, from what was presented to the grand jury all the way through the brief in this appeal, revolved around Equifax. And the theory was that Equifax was deprived of something of value, and the government's argument was that it was these trade lines. They associated a value of $11.8 million. I think it went up to $20 million by sentencing, but it all revolved around Equifax suppressing these trade lines. But nothing was ever attributed as a value of what Equifax lost. The $11.8 million, the $20 million, that would have been the value of the lines to the creditors who held them, but no value was ever established for that. However, after the appellants made their rule 29 motion, the court found that there was sufficient evidence to show that the appellants, and I quote, caused a loss to Equifax's credit reports. And so the court said that was sufficient to show that Equifax was in fact deprived of something of value. However, I think the court contradicted itself at sentencing when it changed the theory of the case based on the pre-sentence report, where the entire theory of the case changed. That it was presented that Mr. Woods's clients were the victims, and even, I believe, 50 of Mr. Johnson's PSR. I don't have the benefit of Mr. Woods's PSR, but I believe they're similar in the same. They, when they talked about what loss Equifax might have suffered, who they referred to as having a loss were the actual creditors. They were talking about the creditors who owned those trade lines might not get paid because now they were suppressed. They also talked about any future creditors who might lend money to Mr. Woods's clients based on these trade lines being suppressed. But again, at sentencing, nothing really showed that Equifax was a victim in this case. So the entire theory of the case changed. Even at the Rule 29 motions and the decision on that, the court never mentioned these other victims, and I don't believe that the appellants had the opportunity to defend against that part of the case. For example, if these clients of Mr. Woods are in fact victims, and it's all part of this wire fraud, nothing was brought up in the case-in-chief about how wire fraud caused Mr. Woods and Mr. Johnson to get these clients money through wire fraud. There are a lot of elements of the conspiracy to commit wire fraud that just the appellants never had the opportunity to defend against because that wasn't part of the case. It wasn't part of the indictment. I don't believe it was what was presented to the grand jury. So I think that based on the contradictory findings, the Rule 29 motion should have been granted because I think the reality is at sentencing, it was shown that there was insufficient evidence to convict on the government's theory of the case, which was very specific related to Equifax. We also have other arguments related to the sufficiency of the evidence. I believe unless the court has specific questions about that, I would... Could I just add, what specifically did the government not prove? The government did not prove that, I mean, there's our property argument, which Mr. Ashmore addressed, but the government did not prove that Equifax was deprived of any property as that is defined under the law. The court... So your argument, I'm sorry to interrupt, but your argument is specifically on a determination that Equifax is the only relevant victim in this case? That is all that was charged in the indictment. That was all the government's case revolved around and therefore, yes, that's... that was the victim alleged in this case. So why did the prosecutor say in the opening statement that Equifax was the principal victim? Well, I think that the... It was probably because sometimes there are unknown victims out there. I certainly don't think... I think the indictment, the way the indictment read, that when... There's one sentence in there that said that the appellants were trying to, I think, improve their credit histories, but I'm not sure that the original theory wasn't that these clients of Mr. Woods might have been involved in the scheme. I'd never inferred from the indictment that they were considered victims, and I certainly didn't think there was anything presented at trial that would put the appellants on notice that the government considered them victims. Does that answer your question? Well, sure. Okay. And to answer the value of something to Equifax, in addition to the fact that we have argued that it's not property, I don't think there was any proof presented at all that of what the value was if their credit reports were impaired, what that value might be. So there was no evidence presented that there was a loss or could be a loss to Equifax because... Are trade secrets, corporate trade secrets, property? Corporate trade secrets are property. Okay. And so how do you get that information at issue in this case? Well, I think trade secrets usually have some, there are certain properties about it such that no one else knows about it, but in the case of the Fair Credit Reporting Act, this has, this information that's provided by these data furnishers is provided to numerous companies. The government has access to it. It's the consumer's information. It appears on a credit report. They can get, I don't think it's the type of secret information that trade secrets are normally classified as. Okay, that's one distinction, but why isn't it appropriate to consider this kind of information to have value in the nature of a property interest? I think because, because it is available to so many people, it's furnished for free to Equifax and it's not information that's theirs to begin with. It comes from the creditors. What they may have goodwill in their credit report, the thing that they produce, but it's still not the type of information that rises to the level of property. As to your constructive amendment argument, has any court ever recognized a constructive amendment of an indictment based upon the district court's sentencing decisions? No, I concede and I think I acknowledged in the brief that that's an unusual argument, but the Fifth Amendment does not allow a person to answer for a crime unless it's on presentment or indictment by the grand jury. And I don't think it's any less egregious that this would occur after the verdict because the result is the same. What about the concept of relevant conduct under the sentencing reform act? I think that relevant conduct, I thought about that. I don't think this was relevant conduct. Usually relevant conduct is. But if it is. If it could count as relevant conduct, I'm aware of the relevant conduct concept and how that could be an argument made, but I don't think this was relevant conduct because I think the entire conviction theory of the case shifted and changed to a change in victims. They weren't just relevant conduct. It was the entire theory of the case changed and it wasn't a completely separate offense like relevant conduct usually is like a charge in an indictment that is ultimately dismissed or what have you that's counted as relevant conduct. Let me see if Judge Keenan, Judge Keenan, you have any questions? No, thank you. Thank you. Mr. Holliday. Thank you very much. I would like to answer a couple of questions that have come up and then I would prefer to focus on Equifax because I think there is a very real property interest that Equifax has. But since the appellants focused initially on my opening statement, I thought I'd draw to the court's I certainly don't plan to read very much, but I identified not only Equifax, but the customers of Lester Woods as well as the downstream creditors as well in my opening statement. So in framing. Excuse me though, Mr. Holliday, none of that really matters what you identified if you don't have a property interest here, do you? I mean, tell us what the property interest is. I'm really struggling with that because I looked through your brief and I found about eight different descriptions of what the property interest is. The credit information, the integrity of their credit information, the right to report accurate information. Your brief seems to go in different directions in attempting to narrow what the property interest was and I think that's where you need to focus your attention here. Okay, gladly, Your Honor. The commonality in all of that is information. The property interest that Equifax has is the information that's in their database and the accuracy. Now, if they didn't have exclusive right to that information, they have no proprietary interest in the information they received, isn't that correct? The proprietary interest, Your Honor, comes with how they use that information. It's all these people that extend credit, GM. It comes into Equifax, they compile it and then they generate a credit score from that information, but it's tantamount to Equifax. Okay, how was that taken from them? It was taken from them. If you take the database that's at Equifax and you have all this information that has all this consumer credit lines in it and if you consider that that was printed out on a piece of paper and all of that paper is stored in file cabinets at Equifax, which in essence it was, that when these fake police reports were sent into Equifax, causing them to strike off credit lines from different consumers, it's as though Lester Woods and Michael Johnson went into those file cabinets, took out the accurate credit reports, threw them away and replaced them with their own credit reports. So they are depriving Equifax of their proprietary information because they receive it, they compile it and they use it for their business. So are you saying then that they are depriving Equifax of their assessment of the information? Is that what your case comes down to? It does not, Your Honor, because it goes one step below that to the information itself. It's the information that they're analyzing to come up with the credit score or whatever, but it's the information itself that is the property. That is available to many, many other people in the marketplace. It's available in different forms and not all compiled and not from all different sources. You can imagine if there were a new Equifax or Experian or TransUnion, they were trying to get started, that they would pay Equifax for the information in the database, for that collection of information. Okay, is there evidence in the record as to any value of what you're talking about? Well, there is. What is it? It's the 11.8 million and the 20 million dollar figure that was presented during the trial because that is the value of the credit lines that were removed. Now if you try to, now here's why. Well, that's the windfall. I mean these so-called victims really got a huge windfall, didn't they? Because of this manipulation, they got credit that they weren't entitled to, they got loans they weren't entitled to. I'm having trouble figuring out what the loss is. I mean, it seems to me this has to be a crime, but I'm just not sure the crime fits the language of the statute. That's what's troubling me. Obviously, this shouldn't be countenanced, this kind of activity, but does the crime fit the statute? The crime is alleged fit the statutory requirements. Your Honor, I believe clearly it does because that information has value. It's information that is the entire basis of Equifax's business as long as, and Experian. Why didn't you try your case the other way as Mr. Ashmore suggested? Name these people that got their credit reports revised. Why didn't you try it that way? Wouldn't it have been much simpler? It would not have captured the magnitude of the case. I mean, this is a significant economic crime, Judge Wooten. When we got down to it, we're talking about $31,000. That was the most, that was the easiest way for Judge Wooten to sentence these two individuals based on the sentencing guidelines which demand a concrete, objective, measurable number. And so I think he took the way that would make the cleanest record. And so if you take the amount of the customers of Lester Woods paid, then that was a nice way to apply the guidelines. However, the economic crime here vastly exceeds the $31,000 that was used to calculate the sentence in this case. When you, it's just more difficult to determine. It's unknowable, isn't it? In the sense that, we don't, we have no idea how much of the new credit these folks who had ginned up credit reports, how much of that they will never pay. Judge Davis, you're exactly right. We don't know who's going to file bankruptcy two years from now, four years from now, six years from now. It's unknowable. In very much the same way as a mortgage fraud case is somewhat unknowable. Or the question about trade secrets before, how do you information is the essence of the Equifax business. And it's a question of whether when we prosecute 21st century crimes of fraud, in a way, you know, Equifax's business model I don't think existed at this level at the time the fraud statutes are coming out. But now we clearly have businesses relying on information, trade secrets, intellectual property, all of these things. When you have individuals like Lester Woods and Michael Johnson coming in, reaching into their databases, and changing that information, you can imagine, and this I think also goes to a point that Judge Keenan has been making, that if word got out in the marketplace that Equifax's information is corrupted, is wrong, is inaccurate, and you could not rely on it for anything, the value of Equifax would be zero. Right, but that's a civil fraud, excuse me, I'm sorry, that's a civil fraud suit with an economic loss theory where you're showing economic loss in tort. That's not a criminal deprivation of a property interest at an identifiable point in time. Your Honor, that would be a parallel issue, but when you have individuals such as Lester Woods and Michael Johnson deliberately making misrepresentations to a business that relies on the accuracy of its information for its entire business model, when you have deliberate misrepresentations that deprive somebody such as Equifax of their property interest. Right, but you're talking about a future loss. The loss that you're just describing, it seems to me, is a loss that will occur to Equifax in the future at such time as its potential clients or then existing clients discover that some of their information has been corrupted. And is a future loss something that is contemplated under the statute? It's an immediate loss in the sense that the information is corrupted as soon as the fraudulent incident reports were submitted. Right, but you were suggesting that the loss would be sustained when these people no longer go to Equifax, and those are future events, aren't they? They would be future events, but then also, if you analogize this, I'd use the example of mortgage fraud a minute ago. At the time that bad loans are made in the mortgage market, those loans aren't bad. They've just been extended. On day one, nobody's defaulted on those loans. But we still recognize mortgage fraud when a bank or a credit- Right, but under what statute? A fraud statute, Your Honor. Right, right. Are you talking about the exact same statute that's under prosecution here? Because we've got to look at the elements of this crime, do we not, rather than the elements of another crime? We absolutely do, and the only reason I hesitated was because we charge wire fraud. So if there were a wire involved in the other case, then you could charge it. But you have a mis- Not to be pedantic, but the court knows any fraud statute, mail fraud, wire fraud, bank fraud, or whatever, a misrepresentation that deprives somebody of a property interest. And that's what we have here. Let's talk about your Bruton issue a minute. Can you give me a case that would support what the district court did in this case in handling Johnson? The court, I believe, relied a lot on Akincoy, and I don't want to mix it up, but I think Glisson, perhaps, as well? When we were reviewing that issue at trial in anticipation of Agent Grossi's testimony, Judge Wooten had looked at probably more cases than the rest of us had, but it seemed to be, it clearly was, the solution was to replace someone else. I would also say this. The prime, the conspirators in this case who were charged criminally were Lester Woods and Michael Johnson. But there were other sources of client referrals. There was Ekeechi Lotta, Russell Fair, there were all kinds of other individuals. I think the statement was fine, but I don't think it should be lost that there did not have to be the immediate connection to Lester Woods. I also was reading back over that argument last night, and Agent Grossi was the very last witness, and I think I told Judge Wooten he would be the 37th witness. I can't remember if we called everybody, so I don't want to say he was the 37th witness, but this was way downstream. And at least 20 people had testified as to the conspiracy. And the case law is clear that if the jury can put it all together based on other evidence that's already been presented in the case, then there's nothing wrong with someone else. It's those instances when the prosecutor says, where did you get this information from? Well, I got it from someone else. Okay, at that point in your investigation, did you contact Lester Woods? I think Akincoy probably saves you. I just wanted to make sure, is that what you were thinking about? It is, Your Honor, and I accept the court's representation of saves, but I think we're on much safer ground, or more solid ground than saves. I thought it was pretty clear that what Judge Wooten was- I don't know, just my hand. I understand. Whenever I hear saves, I'm, anyway. Sounds pretty theocratic. It does. It does. I appreciate the court's questions. I just, I- If, Judge Keenan, did you have any additional questions? No, thank you. I don't recall, did you have customers of Equifax come in to say something along the lines of, if I believe that of the three credit agencies, one of them has files that are so badly corrupted by the removal of these credit lines, I'm not going to buy their credit reports. I'm going to go to TransUnion or Expedia and buy my credit reports from them. You didn't do that. I mean, hindsight's always 20-20. I bet you wish you had now, don't you? It would have been challenging in a way because you would have had to identify who gave these customers credit on downstream. The file- No, no, I don't mean credit grantors of the people who had the improved reports. I mean just any customer of Equifax. Just to establish the pecuniary value to Equifax of having the integrity of their file. It seems to me it would have been a fairly easy thing to establish, bring in two or three, bring in somebody from Macy's, somebody from JCPenney's, somebody from, I don't know. No, I agree. Burger King? I agree. It would have been a belt and suspenders approach, but Judge Davis, I just felt it was self-evident. If a credit reporting agency says somebody has a 700 credit score and it's actually 300, who in the world is going to pay for that? So, I just will circle back briefly in my opening statement on page 158 of the joint appendix. I said, so that's why it matters. It matters to Equifax because their information has been compromised. It matters to the next creditor because they're making loans that are much more risky than they thought they were going to be, and it matters to the people that are actually trying to do something about their credit because they are paying good money to try to get themselves back on their feet thinking that Lester Woods is doing them some good when actually he's compounded their problems. And then, not to belabor the issue, but on page 10 of my brief, of the appellee's brief, I talk a little bit about Gillian, the Gillian case, and there's also mention in my brief about the Carpenter case, the Wall Street Journal case about the column. And clearly, the court has recognized before that the difference between tangible and intangible property interests. I think, you know, with this information that's in the database, you get pretty close to tangible. It's still, it's stored in a computer, but as I was responding to Judge Keenan, I mean, you could print it out. It's there. It's information that's there. But then, we had the jury charged with some language that says property is anything over which its owner has a right that can be assigned, traded, bought, or otherwise disposed of. It does not have to be tangible property, and the government does not have to prove that the property owner suffered a financial loss, and Judge Davis, that's what you were addressing before. The government need only prove that the property owner was deprived of some right over that property, which includes the right of exclusive use. A property owner has an intangible right to control the disposition of its assets, and that finished up on page 11 of my brief. So, clearly, Equifax, this tangible property of information, has the right to maintain the integrity of that information and to be free from individuals like Lester Woods and Michael Johnson submitting police reports that they trusted, and that they changed their information, their property, based on those police reports. And so, in essence, what you have is Equifax has been deprived of their property rights because their good information has been exchanged for bad. That's as clear as I can put it. I just did not see that it was a close call here. I understand that it's more of a 21st century intangible property, you know, information age kind of thing, but it's there. It's there. And Equifax, if their information is known to be bad, the value of their company is zero. There was something, Judge Davis, that you mentioned, Experian, TransUnion, they could have gone to somewhere else. All of these companies share the information. One is lost, they're all lost. The reason the agent used Equifax was because that's where the referral came from, and we were up to $20 million in credit lines. There wasn't a need to go to the other. Thank you very much. I appreciate it. Ashmore. Just briefly, my case was summarized through Judge Keenan's question. This has to be a crime, and I'm paraphrasing. This has to be a crime, but does this crime fit the statute? And that's my argument in a nutshell. These gentlemen may have been bad actors, but they did not commit wire fraud. If the information had been removed from Equifax's database by hacking, right? Would Equifax have been deprived of a property interest? Well, certainly that's a computer fraud. Right, different criminal statute, absolutely. But would that constitute a deprivation of property? I would say no, Your Honor. No? And it's hard to talk about a computer hacker, but I don't know what- It's very easy to talk about a computer hacker. But what is he obtaining? What is he getting under a wire fraud statute? No, the question is what is Equifax losing? Isn't it? Well, that is the question. I don't know what they are losing. I don't know what property they would lose in that situation. The information about Citizen X, who according to Equifax's non-corrupted files, has a credit score of 500. But when the hacker goes in and corrupts the files, Citizen X now has a credit score of 700. Well, those are facts that are given to them voluntarily. They don't buy those facts, and you can't own facts. And so, again, I don't think that that's property that the computer hacker is acquiring. And I can't give up on my Bruton argument, Your Honor. I just think it's an insult to the jury to think that they don't know immediately that when you say someone else is Lester Woods, again, as outlined. Didn't we approve that procedure in Akincoyd? Well, Your Honor, that is a procedure that has been approved, yes. But, again, you've got to look beyond. You've got to rule out all alternatives. And while that is a procedure that can be used successfully, in this case it just was not. There's no doubt about it that someone else was synonymous with Lester Woods. Thank you, Mr. Ashmore. Ms. Alvaro. Thank you, Your Honors. I just wanted to address one question that I believe came from Judge Davis about establishing the pecuniary value. I don't think it's plausible to say that the value of Equifax's credit reports was ever impaired, and nothing was ever shown about it. And in part, that's because the testimony of Equifax's own employees established that their reports are often inaccurate. That they get hundreds of thousands of pieces of information a day, and they admitted they can't verify that. So they are on a daily basis selling inaccurate reports, and nothing was proven to show that this particular inaccuracy, regardless of the questionability of how that came about, further impaired the value of their credit reports. No one came in and said, we're not buying Equifax's reports anymore because of these inaccuracies. We're not even sure that this was knowledge that their clients had, that these reports were inaccurate. Additionally, part of the testimony from Equifax's employees was that consumers often see inaccuracies on their reports. And it's a nightmare for them to get them cleaned up. So Equifax is not even doing a whole lot to clean up inaccuracies pointed out to them by consumers. So I did want to address that. The government didn't address many more issues related to the Rule 29 or constructive amendment argument. But I would say that this, The evidence showed that, I'm sorry. I would say the constructive amendment, the issues kind of overlap. So there's an issue related to the constructive amendment, and there's an unpublished case in this circuit, Mason 71 Fed Appendix 612, that points out that you can have some kind of constitutional issue when there's a danger of a second prosecution for the same offense. And I think this occurred in this case when, as Mr. Ashmore said and as Mr. Holliday addressed, that the government could have brought the case and revolved it around Mr. Woods' clients, but they didn't do that. So now, not only were the appellants not able to fully defend against that, but now when we're talking about perhaps this doesn't fit the wire fraud statute and doesn't fit this particular crime, that perhaps they are at risk for another prosecution. Now I apologize, I see my time is up. Thank you, Ms. Alvaro. We note that both Mr. Ashmore and Ms. Alvaro were court appointed, and we appreciate your service to your client and to this court. We'll come down and speak to counsel, then take a short recess in order to reconstitute the panel.
judges: Barbara Milano Keenan, Henry F. Floyd, Andre M. Davis